Minute Order Form (06/97)

# United States District Court, Northern District of Illinois ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6405 | **DATE** | 11/12/2002 |
| **CASE TITLE** | Lucini Italia Company vs. Giuseppe Grappolini, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss Counts I-V of Plaintiff's first amended complaint [67-1] is denied. Defendants shall file their answer to Counts I-V on or before 11/27/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 13 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 95 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/12/2002 | |
| | | 02 NOV 12 PM 4:12 | date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCINI ITALIA COMPANY, ) | |
| ) | |
| ) | Case No. 01 C 6405 |
| Plaintiff, ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| GIUSEPPE GRAPPOLINI, and ) | |
| GRAPPOLINI G. s.r.l., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

DOCKETED
NOV 13 2002

Plaintiff, Lucini Italia Company ("Plaintiff" or "Lucini"), filed a seven count first amended complaint against the defendants, Giuseppe Grappolini ("Grappolini") and the Grappolini G.s.r.l. company ("GSRL" or collectively "Defendants"). Grappolini answered count VI (violation of the Illinois Trade Secret Act) and count VII (declaratory judgment) and now moves to dismiss the first five counts. The issue to be determined is whether the preemption clause of the Illinois Trade Secret Act ("ITSA"), 765 Ill. Comp. Stat. 1065/8(a), precludes Lucini from bringing its breach of fiduciary duty (count I), constructive fraud (count II), fraud (Count III), promissory estoppel (count IV), and unjust enrichment (count V) claims. For the reasons stated herein, Defendants' motion to dismiss is denied.

95

# I. LEGAL STANDARDS

## A. Motion to Dismiss

In deciding a motion to dismiss, all well-pleaded allegations in the complaint are accepted as true. *Hishon v. King & Spaulding*, 476 U.S. 69, 73 (1984). Ambiguities in the complaint are construed in favor of the plaintiff. *Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal of the claims is proper only when it appears beyond doubt that the plaintiff can prove no set of facts to support his claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## B. Preemption Under the ITSA

The ITSA preemption clause provides that the ITSA "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8(a). The clause also has an exception which provides that preemption does not affect "contractual remedies" and "other civil remedies that are not based upon misappropriation of a trade secret." 765 ILCS 1065/8(b)(1) and (2). A trade secret is defined as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to

2

maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

When a federal court exercises diversity jurisdiction, it must apply state substantive law as interpreted by the highest court of the state. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Absent definitive authority from the state supreme court, federal courts must give "great weight" to the state's intermediate appellate court holdings. *Id.* Neither the Illinois Supreme Court nor the Illinois Appellate Courts have squarely addressed the preemption issue. Thus, this Court "must make a predictive judgment as to how the supreme court of the state would decide the matter if it were presented presently to that tribunal." *Id.* at 635.

While recognizing the existence of the exception provision, many federal cases focus on section 8(a), the preemption clause. These cases hold that facts cognizable as a misappropriation of trade secret may be claimed only under the ITSA and bar pleading in the alternative. *Learning Curve Toys, L.P., v. Playwood Toys, Inc.*, No. 94 C 6884, 1999 WL 529572 ( N.D. Ill. July 20, 1999). Depending on the facts, some cases look more closely at the exception to the preemption provision and find that independent causes of action may be pursued alongside an ITSA claim.

*Learning Curve* is an example of a case focusing on the preemption clause. The dispute involved two companies attempting to produce a toy train set with a more realistic train sound. 1999 WL 529572, at *1. The parties met, and the defendant shared its ideas

3

with the plaintiff company, but no relationship to produce the toys was formed. *Id.* The lawsuit arose after the plaintiff produced a train making the realistic sound and filed a declaratory judgment action. *Id.* The defendant counterclaimed for breach of implied-in-fact contract, unjust enrichment, violation of the ITSA, and idea misappropriation, all based on the alleged misuse of the train idea. *Id.* at *1,*2. The court held that the common law claims were preempted by the ITSA. *Id.* at *3. Furthermore, if the defendant misappropriated ideas or information, the plaintiff can not plead an alternative cause of action (e.g. breach of fiduciary duty) in the event the information may be found not to be a trade secret. *Id.* at *2-*3.

The court rejected the argument that the ITSA simply preempts common law claims for which misappropriation of a trade secret is an element. The court gave the preemption clause a broad interpretation.

> [T]he [preemption] provision eliminated common law claims based on conduct which might support an ITSA action. In other words, if the operative facts are arguably cognizable under the ITSA, any common law claim that might have been available on those facts in the past now no longer exists in Illinois.

*Id.* at *3. In reaching this determination, the court cited the Seventh Circuit's *Composite Marine* decision which held "Illinois has abolished all common law theories of misuse of such information . . . . Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong." *Composite Marine Propellers, Inc., v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992), cited in *Learning Curve*, 1999 WL 529572, at *3. In *Composite Marine*, the Seventh Circuit held that plaintiffs could not proceed on an unfair competition

4

or breach of fiduciary duty theory based on defendant's use of plaintiff's secret information.

While the common law claims in *Learning Curve* were based on the same set of facts as the trade secret claim, other cases address whether claims based on independent facts survive preemption. In *Automed Technologies, Inc. v. Eller,* the plaintiff employer sued a former employee for taking trade secrets when he left the plaintiff's employment. 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001). The plaintiff alleged an ITSA claim along with many other common law claims, but the court only dismissed claims based on the same facts as the ITSA claim. *Id.* For instance, the court dismissed a conversion claim for the taking of software and design plans because they were among the trade secrets allegedly appropriated. *Id.* However, the court did sustain the breach of fiduciary duty claim which alleged that the defendant breached his duty as an officer by usurping a corporate opportunity. *Id.* This claim "states an independent claim, completely distinct from any trade secrets." *Id.*

*C & F Packing Co., Inc., v. IBP, Inc.* shows an example of claims too closely intertwined. The plaintiff brought a claim alleging that the defendant stole its secret process for making a pre-cooked sausage topping for pizza. No. 93 C 1601, 1994 WL 30540, at *1 (N.D. Ill. 1994).[1] The plaintiff also alleged that the defendant made "false promises 'for the purpose of inducing C & F to divulge its Process and share it with competitors . . . .'" *Id.* at *6. Moreover, in another claim, the plaintiff alleged that the parties had a fiduciary

---

[1] *C & F* addresses the preemption provision in the Kansas Uniform Trade Secret Act. The Kansas provision and the Illinois provision both originated from the Uniform Trade Secret Act, and their preemption provisions are substantially similar. *Learning Curve,* 1999 WL 529572, at *3 n.6.

5

relationship which required the defendant "not to use the confidential information to C & F's detriment or to [the defendant's] selfish benefit." *Id.* The remainder of the plaintiff's claims were similar in form, pleading the same facts using different legal theories. *Id.* The common law claims in this case relied entirely on the trade secret facts. Finding that the common law claims were "inextricably linked" to the trade secret claim and preempted by the ITSA, the court dismissed them. *Id.*

In sum, the key to determining whether the common law claims are preempted is to analyze each claim and its relationship to the facts or conduct of the trade secret claim. If the common law claims rely on the trade secret facts, they are preempted and will be dismissed. Otherwise, they survive.

## II. BACKGROUND FACTS

These background facts are taken from Lucini's first amended complaint. Lucini is an Illinois corporation founded by Arthur Frigo ("Arthur"). The company is operated by Renee Frigo ("Renee") and her husband, Daniel Graeff ("Graeff"). Renee is Arthur's daughter. Lucini is involved in entrepreneurial start-up projects. Approximately five years ago, Arthur conceived an idea for the sale of specialized olive oil; the success of which depended largely on its quality, marketing, and advertising.

Giuseppe Grappolini was the olive-oil "expert" and supplier. Grappolini is a resident of Italy who owns Grappolini G. s.r.l. ("GSRL"), also located in Italy. GSRL distributes extra-virgin olive oil throughout the United States and Europe. In December of 1997, Lucini

6

and Grappolini entered into a supply and consulting agreement. Grappolini and his company were responsible for the purchase of olive oil in Italy, bottling it, and packaging it. Grappolini was personally compensated by Lucini for his consulting services on a monthly basis from 1998 through the spring of 2000.

Lucini spent large amounts of time and money on marketing its new product including marketing Grappolini as an olive oil expert in its literature. Lucini spent over $100,000 on this marketing even before it formalized the supply and consulting agreement with Grappolini.

In 1998 Lucini and Grappolini contemplated adding olive oils with essential oil extracts to their line. The new project was termed the "LEO project" (i.e. Lucini Essential Oils). After extensive research on the potential market and receiving positive results, Lucini and Grappolini were eager to move forward. Throughout this time, Grappolini traveled from Italy to attend meetings in Chicago with Lucini.

Grappolini located an essential oil supplier in Italy, Vegetal Progress s.r.l. ("Vegetal"). Vegetal was owned by the Perottis - a family known to Grappolini. Grappolini and Vegetal negotiated during the summer of 1998; Grappolini represented to Lucini that they reached a supply agreement in which Vegetal agreed to supply essential oils exclusively for the Lucini product. Supply exclusivity was important to Lucini as it entered this new market.

Despite the negotiations and Grappolini's representation of agreement, Vegetal had not signed a supply contract by February 1999. Lucini asked Grappolini if they would have

better luck if Lucini approached Vegetal. Grappolini advised that he would be best able to handle the negotiations. Lucini provided Grappolini with a draft contract between Lucini and Vegetal which Grappolini agreed to present to Vegetal. In May 1999, the Frigos, Grappolini, and the Perottis met. Grappolini suggested that the Frigos refrain from bringing up the proposed business agreement because the Perottis would be offended by a bold American approach.

Grappolini and Lucini continued to meet about the LEO project during the summer of 1999 in Chicago, Italy, and New York. During these meetings Lucini shared its confidential marketing and design information regarding the LEO project with Grappolini. The information included Lucini's target marketing strategies, research regarding consumer profiles, plans for introducing the new products in different venues, analysis and testing of the effect of packaging in different locations, the advertising strategy to establish its "brand" identity, and the effect of the pricing on the introduction of the new product. Lucini spent a significant amount of money on developing this marketing and design strategy and shared it only with its senior management, consultant, and Grappolini. Lucini took precautions to protect the secrecy of such information by giving it to Grappolini only after he signed two confidentiality agreements.

During one meeting, Grappolini stated that he would have the Vegetal contract in thirty to sixty days. Concerned about the status of the negotiations, Arthur reminded Grappolini that the timing of the product launch was important. Lucini wanted the product

out before the San Francisco fancy food show in mid-January 1999. Timing was also crucial to Lucini's credibility with its customers which would be jeopardized if it did not finalize the contract in the next thirty to forty-five days. Grappolini assured Lucini that everything would work out.

At the beginning of November, Lucini ordered the LEO product for delivery in Chicago in late February and San Francisco a week later. Soon thereafter Graeff traveled to Italy to finalize the Vegetal agreement. Graeff, on behalf of Lucini, asked Grappolini about the supply contract. At that point Grappolini admitted that he had entered a supply contract with Vegetal for himself. Grappolini refused to provide a copy of the contract until late December 1999, although it was dated October 4, 1999. The Grappolini/Vegetal contract barred Vegetal from assigning its rights under the contract to any third-parties; it also provided Vegetal with the right to suspend production at any time.

Lucini attempted to negotiate the situation with Grappolini. The discussions produced no agreement and Lucini terminated its relationship with Grappolini. Lucini later discovered an article describing a new product mixing essential oils with olive oil on the market by Grapplolini. Moreover, in early 2001, Lucini found Grappolini's product for sale in the United States, and Grappolini has admitted to sales of approximately 1,200 bottles of the product to a large United States retailer.

Based on the above facts, Lucini filed a complaint against Grappolini in the Circuit Court of Cook County, Illinois. The action was later removed to federal court, and the

complaint amended. The first amended complaint alleges seven counts against Grappolini: 1) breach of fiduciary duty, 2) constructive fraud, 3) fraud, 4) promissory estoppel, 5) unjust enrichment, 6) violation of the Illinois Trade Secret Act, and 7) declaratory judgment. Grappolini moves to dismiss the first five counts.

## III. DISCUSSION

Grappolini alleges that the first five counts of Lucini's complaint are preempted by the Illinois Trade Secret Act. Grappolini argues that the common law claims are "married" to the trade secret claim and preempted by the Act. On the other hand, Lucini argues that its common law claims are independent of the trade secret claim and not preempted. Each count will be discussed in turn.

### A.     Count I - Breach of Fiduciary Duty

To set out a claim for breach of fiduciary duty, a plaintiff must allege facts establishing: (1) the existence of a fiduciary duty on the defendant's part, (2) the defendant's breach of the duty, and (3) damages proximately resulting from the breach. *Romanek v. Connelly*, 753 N.E.2d 1062, 1072, 324 Ill. App. 3d 393, 404 (Ill. App. Ct. 2001). Lucini alleges that Grappolini was its trusted consultant, and as such, he agreed to act on Lucini's behalf when negotiating and contracting with Vegetal. First Amend. Compl. ¶¶ 37, 38. Grappolini accepted the trust, but then betrayed it by entering into an exclusive contract with Vegetal on his own behalf. *Id.* at ¶ 39. Lucini was harmed by Grappolini's usurpation of the

10

corporate opportunity. *Id.* at ¶ 42.

In a situation where the alleged breach of duty does not rely on the misappropriation of a trade secret, the claim survives. *Thermodyne Food Serv. Prod., Inc., v. McDonald's Corp.,* 940 F. Supp. 1300, 1309 (N. D. Ill. 1996). For instance, in *Thermodyne*, the plaintiffs premised a breach of fiduciary duty claim on the defendant's position as an officer of the plaintiff company not the trade secret facts. *Id.* The court held that if the conduct giving rise to the breach involved the misappropriation of trade secrets, it was preempted, but to the extent the claim involved conduct other than the trade secret misappropriation, it survived. *Id.* Further, as discussed above, the *Automed* court refused to dismiss a breach of fiduciary duty claim based on the corporate officer's usurpation of a business opportunity. 160 F. Supp. 2d at 922.

Construing the complaint in favor of Lucini, it alleges that Grappolini held a position of trust as Lucini's consultant and used that position for his own interests instead of Lucini's. This states an independent cause of action without relying on the misappropriation of a trade secret. It was Grappolini's conduct in contracting on his own behalf when he should have been acting on Lucini's behalf that is important to this claim. Count I survives.

**B.     Count II - Constructive Fraud**

Constructive fraud is "any act, statement or omission which amounts to positive fraud or which is construed as fraud by the courts because of its detrimental effect upon public interests and public or private confidence." *Small v. Sussman,* 713 N.E.2d 1216, 1222, 306

11

Ill. App. 3d 639, 646 (Ill. App. Ct. 1999). Count II alleges that Grappolini "had superior knowledge and information pertaining to the negotiation of the Vegetal contract, and used that information to Lucini's disadvantage." First Amend. Compl. ¶ 46. Lucini contends that this claim is based on Grappolini's position as a trusted advisor with superior knowledge of the negotiations, not on his knowledge or use of any trade secrets. Although this count raises a closer question, to the extent that it extends only to Grappolni's superior knowledge of the Vegetal negotiations and not the confidential marketing research and design information, it is not inextricably intertwined with the trade secret claim. On this basis, it survives.

C.  **Count III - Fraud**

To state a claim for common law fraud, the plaintiff must allege: (1) the defendant made a statement, (2) the statement was material in nature, (3) the statement was untrue, (4) the defendant knew that it was untrue or made the statement with culpable ignorance of its truth or falsity, (5) the statement was made for the purpose of inducing the plaintiff's reliance, (6) the statement was actually relied upon by the plaintiff, and (7) the plaintiff suffered injury as a result. *Small*, 713 N.E.2d at 1221, 306 Ill. App. 3d at 646. Lucini's fraud count alleges that Grappolini represented to Lucini that he was negotiating with Vegetal on Lucini's behalf; this representation was made knowingly and with the intent that Lucini rely upon it. First Amend. Compl. ¶¶ 48 - 51. In addition, Lucini alleges that it relied on the false representation to its disadvantage. *Id.* at ¶¶ 52-53. Once again, the focus is on the Vegetal contract.

In *Thomas & Betts Corp. v. Panduit Corp.*, the court granted summary judgment to the

defendant on a fraud claim when it did nothing more than restate the claim for misappropriation of trade secrets. 108 F. Supp. 2d 968, 974 (N.D. Ill. 2000). There, the fraud claim alleged that the defendant lied about his intention to steal the alleged trade secret information, and lied in order to get access to the information. *Id.* As in *Thermodyne*, the claim in *Thomas & Betts* focused on the defendant's improper conduct in obtaining the trade secret information. In contrast, the fraud claim here alleges a distinct cause of action: that Grappolini represented that he was negotiating on behalf of Lucini when he was actually negotiating on behalf of himself. For this reason, the claim survives.

*MG Capital v. Sullivan* is a good example of how to resolve these issues. There, the court struck only the portion of a fraud claim relying on the misappropriation of trade secrets; any portion independent of the trade secret was retained. *MG Capital, LLC, v. Sullivan*, No. 01 C 5815, 2001 WL 1609382, at *4 ( N. D. Ill. Dec. 17, 2001).

### D.  Count IV - Promissory Estoppel

A successful claim for promissory estoppel shows that: (1) the defendant made a promise unambiguous in its terms, (2) the plaintiff relied on the promise, (3) the reliance was expected and foreseeable from the defendant's perspective, and (4) the plaintiff's reliance on the promise was detrimental. *Pickus Construction and Equip. v. Am. Overhead Door*, 761 N.E.2d 356, 361, 326 Ill. App. 3d 518, 523 (Ill. App. Ct. 2001). Lucini's promissory estoppel claim alleges that Grappolini promised that he was negotiating a contract with Vegetal on Lucini's behalf. First Amend. Compl. ¶ 58. Lucini reasonably relied on the promise, spent

substantial sums of money marketing the product, and intentionally did not contact other suppliers for the product. *Id.* at ¶¶ 58-59. This claim is independent of the trade secret and survives dismissal.

**E.     Count V - Unjust Enrichment**

An unjust enrichment claim must allege that: (1) the defendant has "unjustly retained a benefit to the plaintiff's detriment" and (2) the defendant's "retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc., v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 160 (Ill. 1989). Lucini's unjust enrichment claim alleges that Grappolini and GSRL benefitted from his usurpation of the supply agreement by sales it made in the United States and Europe, and the benefit would have gone to Lucini absent Grappolini's conduct in usurping the opportunity. First Amend. Compl. ¶ 61.

In *Web Communications v. Gateway*, the plaintiff's claim for unjust enrichment was dismissed as preempted when the plaintiff acknowledged that the claim was "essentially a claim for restitution." 889 F. Supp. 316, 321 ((N.D. Ill. 1995). The court granted summary judgment to the defendant. *Id.* at 321-22. Similarly, to the extent that Lucini relies on Grappolini's alleged misappropriation of the confidential marketing information to show his benefit, the claim is preempted by the ITSA; however, to the extent that it is based on the usurpation of the Vegetal agreement, it survives.

## IV. CONCLUSION

The ITSA preempts common law claims for misappropriation of a trade secret. The ITSA does not affect common law causes of action that are not based on the misappropriation of a trade secret. Construing the ambiguities in favor of Lucini, this Court finds that counts I - V state claims independent of trade secret misappropriation. They arise from Defendants' actions in obtaining the Vegetal supply contract for their benefit. **Accordingly, Defendants' motion to dismiss counts I-V of plaintiff's first amended complaint is denied. Defendants shall file their answer to counts I - V on or before November 27, 2002.**

**SO ORDERED THIS 12th DAY OF NOVEMBER, 2002.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Claire Perona Murphy
Steven Craig Florsheim
Robert David Cheifetz
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3300
Chicago, IL 60603
Attorneys for Plaintiff

Wallace Cyril Solberg
Steven Patrick McKey
Laura Colleen Scotellaro
GARDNER, CARTON & DOUGLAS
321 North Clark Street
Suite 3400
Chicago, IL 60610-4795
Attorneys for Defendants